United States District Court
Southern District of Texas

**ENTERED**

October 07, 2024

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALISHA MITCHELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-23-0837 |
| | § | |
| UNIVERSITY OF HOUSTON, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Alisha Mitchell ("Plaintiff" or "Mitchell"), brings this action for employment discrimination based on race (African American) and color (black), and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., against defendant, the University of Houston ("Defendant" or "University"), who employed Mitchell for approximately four months in early 2022.[1]  Pending before the court are Defendant University of Houston's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c), or, in the Alternative, Motion for Summary Judgment on All Claims ("Defendant's MSJ") (Docket Entry No. 25), Defendant University of Houston's Motion in Limine (Docket Entry No. 28), and Plaintiff's Motion in Limine (Docket Entry No. 29). Also pending are Plaintiff's Response in Opposition to Defendant's Motion for Judgment on the Pleadings and Motion for Summary Judgment [Doc. 25] ("Plaintiff's Response") (Docket Entry No. 26),

---

[1]Plaintiff's Original Complaint, Docket Entry No. 1.

and Defendant University of Houston's Reply in Support of Its
Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ.
P. 12(c), or, in the Alternative, Motion for Summary Judgment on
All Claims ("Defendant's Reply") (Docket entry No. 27).  For the
reasons explained below, Defendant's MSJ will be granted and the
parties' motions in limine will be denied as moot.

## I. **Standard of Review**

The University seeks judgment on the pleadings pursuant to
Federal Rule of Civil Procedure 12(c), or, alternatively, summary
judgment pursuant to Federal Rule of Civil Procedure 56.  Because
discovery has closed and both parties rely on evidence outside of
the pleadings, the appropriate standard of review is that governing
motions for summary judgment.

Summary judgment is authorized if the movant establishes that
there is no genuine dispute about any material fact and the law
entitles it to judgment.  Fed. R. Civ. P. 56.  Disputes about
material facts are "genuine" if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party.
Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).  The
Supreme Court has interpreted the plain language of Rule 56 to
mandate the entry of summary judgment "after adequate time for
discovery and upon motion, against a party who fails to make a
showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A "party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex, 106 S. Ct. at 2553). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If, however, the moving party meets this burden, Rule 56 requires the nonmovant to go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

## II.  **Undisputed Facts**[2]

In January of 2022 the University opened a Family Care Clinic ("the Clinic") within the Tillman J. Fertitta Family College of Medicine.   Kimberly Cook ("Cook") served as Director of Clinic Operations.   Cook interviewed and hired Mitchell as a probationary employee to serve as Senior Operations Manager with a start date of January 31, 2022.  Before Mitchell started work, Cook resigned, and Jeremekia Amos ("Amos") became interim Director of Clinic Operations.  When Mitchell started work, the Clinic was operating under a "soft opening" protocol pursuant to which services were provided only to cash-paying patients, while Clinic staff worked to implement procedures for accepting insurance payments and to establish an electronic medical records system.   At that time Mitchell reported to Amos, who is African American and black.

In May of 2022 the University hired Danielle Brownlie to serve as Senior Director of Clinic Operations, and as such, she became Mitchell's supervisor.  Brownlie, who is white, reported to Paule Ann Lewis, who is also white.  Brownlie worked directly with Mitchell on May 16, 2022, and at the end of the day wanted to meet

---

[2]These undisputed facts are excerpted from the "Factual Allegations" section of the Plaintiff's Original Complaint, Docket Entry No. 1, pp. 3-5 ¶¶ 9-20, and the "Background" section the Plaintiff's Response to Defendant's MSJ, Docket Entry No. 26, pp. 5-15.   All page numbers for docket entries refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

with Amos to clarify the expectations for Mitchell's position.[3]
Brownlie worked directly with Mitchell again on May 17th and 18th.
On May 20th, 23rd, and 24th, Mitchell took pre-approved leave.  On
Wednesday, May 25, 2022, Mitchell returned to work.  That morning
Brownlie called Mitchell to a meeting to discuss Mitchell's work-
schedule and the expectations for her position.  Regarding work
schedule, Brownlie told Mitchell that her work schedule was 9:00
a.m. to 6:00 p.m., and instructed Mitchell to arrive as close to
9:00 a.m. as possible.  Brownlie also instructed Mitchell to arrive
"closer to 8:00 a.m." after May 31, 2022, and told Mitchell that
beginning on June 13, 2022, her start time would be 7:45 a.m.
Mitchell recalls meeting with Brownlie, discussing her schedule,
and generally agreeing to the staggered arrival times discussed
with Brownlie on May 25th.[4]  However, Mitchell alleges that during
that meeting, "Brownlie engaged in inappropriate conduct toward
[her], including rudely commenting on [her] nails and hair and
making facial expressions toward her physical appearance indicating
disgust."[5]

---

[3]Oral Deposition of Danielle Brownlie ("Brownlie Deposition"),
p. 12:12-20, Exhibit H of Plaintiff's Appendix, Docket Entry
No. 26-1, p. 109.

[4]Oral and Videotaped Deposition of Alisha Mitchell ("Mitchell
Deposition"), pp. 164:24-165:25, Exhibit E of Plaintiff's Appendix,
Docket Entry No. 26-1, pp. 85:24-86:25.

[5]Plaintiff's Original Complaint, Docket Entry No. 1, p. 3
¶ 13.

The next day, _i.e._, Thursday, May 26th, Mitchell arrived to work after 9:00 a.m.[6]  The parties agree that Brownlie told Mitchell that she could not arrive late again, and that Mitchell had to figure "this" out.[7]  Brownlie contends that Mitchell responded, "It will probably happen again."[8]  Mitchell denies making that response.[9]  Mitchell alleges that "Ms. Brownlie again subjected [her] to inappropriate conduct by raising her voice, making aggressive gestures, and invading her personal space."[10]  Brownlie denies that she raised her voice or made aggressive gestures.[11]

Later that morning, _i.e._, May 26, 2022, Mitchell contacted Alejandra Rodriguez ("Rodriguez"), College of Medicine Business

---

[6]See Declaration of Alisha Mitchell, Exhibit G of Plaintiff's Appendix, Docket Entry No. 26-1, pp. 102-03 ¶ 4.

[7]See Brownlie Deposition, pp. 119:9-121:16, Exhibit H of Plaintiff's Appendix, Docket Entry No. 26-1, pp. 149-51; Mitchell Deposition, pp. 171:5-172:13, Exhibit E of Plaintiff's Appendix, Docket Entry No. 26-1, pp. 87-88.

[8]See Brownlie Deposition, p. 124:10-13, Exhibit H of Plaintiff's Appendix, Docket Entry No. 26-1, p. 153.

[9]See Declaration of Alisha Mitchell, Exhibit G of Plaintiff's Appendix, Docket Entry No. 26-1, p. 103 ¶ 4.

[10]Plaintiff's Original Complaint, Docket Entry No. 1, p. 4 ¶ 14.

[11]See Brownlie Deposition, pp. 120:8-22, 125:14-126:2, Exhibit H of Plaintiff's Appendix, Docket Entry No. 26-1, pp. 150, 154-55.

Administrator, to report concerns about Brownlie.[12]  That afternoon Mitchell met with Rodriguez and told her

> I don't know if I report this to you or someone else, but I want to report Danielle Brownlie's behavior.  She — I feel like she's discriminating against me because I'm Black.  She was talking about my hair, my nails.  She was aggressive, and I think she's a bully, and she was rude to me, and I'm not tolerating that.[13]

Rodriguez told Mitchell that she would report it, but advised Mitchell to reach out to Carlos Luis ("Luis"), Director Human Resource Services.[14]  Mitchell called Luis that afternoon, but he did not answer.[15]  Rodriguez reported directly to Ms. Paule Ann Lewis ("Lewis"), the College of Medicine's Associate Vice President of Business Operations, and was expected to report all human resource-related issues to Lewis, but Lewis does not recall if Rodriguez reported Mitchell's complaint about Brownlie to her.[16]

---

[12]See Mitchell Deposition, pp. 186:3-188:21, Exhibit E of Plaintiff's Appendix, Docket Entry No. 26-1, pp. 92-94.

[13]Id. at 186:15-21, Exhibit E of Plaintiff's Appendix, Docket Entry No. 26-1, p. 92.

[14]Id. at 187:1-2 and 188:11-13, Exhibit E of Plaintiff's Appendix, Docket Entry No. 26-1, pp. 93 and 94; Oral Deposition of Carlos Luis ("Luis Deposition"), pp. 74:15-77:6, Exhibit K of Plaintiff's Appendix, Docket Entry No. 26-1, pp. 191-94.

[15]Id. at 188:14, Exhibit E of Plaintiff's Appendix, Docket Entry No. 26-1, p. 94.

[16]Oral Deposition of Paule Ann Lewis ("Lewis Deposition"), pp. 40:14-43:13, Exhibit C of Plaintiff's Appendix, Docket Entry No. 26-1, pp.70-73.

Brownlie documented her meeting with Mitchell in an email that she sent to herself and to Amos at 1:29 p.m. on Thursday, May 26, 2022, with the subject line, "Informal Disciplinary Documentation" stating:

> Yesterday, 5/25 I discussed time and attendance with Alisha Mitchell. Sr. Operations Manager. I advised her that on June 13th her time in the clinic must begin at 7:45 am in order to be present for anticipated clinic huddles which begin at 8:05 am. I asked her if her current schedule was 9:00am-6:00pm. She said no. She was arriving at 9:00am due to prior agreement and leaving between 5:00pm and 5:30pm. I explained the importance of clinic leadership being present during patient care hours. She said when the school year ends (Tuesday May 31), she could begin to arrive closer to 8:00 am. I told her that was fine and until then I needed her to work as close to 9am-6pm as possible. I explained that her presence is necessary and a reflection of our commitment to the organization and that we were a team. She said she often goes without lunch to which I explained the goal is not to count hours, but to complete the work in a quality manner.
>
> I mentioned quality of work as something that was important to me as a leader and to the integration of our EMR. I explained what was missing from two documents she had worked on prior to my arrival and ask[ed] that she double check before sending them back again.
>
> I also advised Alisha of several policies that would be enacted with the health center soon including a vaccine policy and a hand hygiene policy. She explained that her nails were important to her and she did not know if she should could comply with the policy.
>
> I explained to Alisha from my point of view what our goal is here for the University, for the patients and for our own professional growth. That for me "I would just figure it out". She explained she was a single mom.
>
> Today, 5/26, Alisha arrived at 9:20am. She explained that it was an issue with her children's school bus. I told her she has to figure this out. Later, she came into my office to explain the situation again to which I

> replied "it doesn't matter.  You have to figure this out.
> It cannot happen again".  Alisha continued to explain and
> I interrupted her to prompt her by saying "I'm sorry, it
> won't happen again".  She replied "it will probably
> happen again".[17]

At 1:59 p.m. Amos forwarded Brownlie's email to Lewis with the notation "FYI;" at 3:37 p.m. Lewis forwarded the email to Connie Kemp ("Kemp"), Executive Director, Human Resources Services, and at 3:39 p.m.; Kemp forwarded the email to Luis with the notation "FYI ... this employee is going to reach out to you for guidance."[18]

The next morning, i.e., Friday, May 27, 2022, before 10:00 a.m., Brownlie, Amos, and Luis met over Microsoft Teams.[19] Brownlie recommended Mitchell's discharge for insubordination, performance, and attendance issues, and Luis asked her to send him an email outlining the purported performance problems and prior corrective actions.[20] Following that meeting, Brownlie sent an email to Luis at 10:00 a.m., which she copied to Amos, stating:

> I am writing in regards to . . . employee Alisha
> Mitchell, Sr. Operations Manger.  I am seeking a
> probationary termination based on the issues noted below.
> If further clarification is needed I am able to provide.
> . . .

---

[17]May 26, 2022, Email chain, Exhibit D of Plaintiff's Appendix, Docket Entry No. 26-1, pp. 76-77.

[18]Id. at 76.

[19]Brownlie Deposition, p. 150:14-22, Exhibit H of Plaintiff's Appendix, Docket Entry No. 26-1, p. 165.

[20]Id. at 151:22-152:25, Exhibit H of Plaintiff's Appendix, Docket Entry No. 26-1, pp. 166-67.

**Performance/Conduct Issues**

Disrespecting supervisor with comments

Not grasping concepts to perform job appropriately

Responds combatively to upcoming changes (hand hygiene policy, change in work schedule, arrival time)

Arriving late without approval

Engaging in workplace drama that disrupted work and patient care

Overall performance does not align with the expectations of the position

Does not demonstrate critical thinking necessary for departmental success

**Corrective Action Taken**

When asked for promotional opportunities, interim supervisor verbally discussed performance gaps

Feedback for quality of work was provided via email on 5/12

Feedback for quality of work was provided on 5/27 with specific corrections that employee was unable to complete to specification

Discussed attendance requirements of the position verbally and employee expressed she was unable to meet requirements due to extending [sic] circumstances[.][21]

At 10:44 a.m. Luis responded to the email he had received from

Kemp the day before, stating:

As a follow up, I spoke with the leaders this morning and the employee is still under probation. After discussing their options, they will proceed with probationary

---

[21]May 27, 2022, Email from Danielle Brownlie to Carlos Luis, Exhibit J to Defendant's MSJ, Docket Entry No. 25-1, p. 185.

termination.  Attached is the draft for your reference, as I am also in agreement based on our discussion and the justification they submitted, and will be approving for them to move forward.[22]

At 10:58 a.m. Luis responded to Brownlie's email, stating, "Based on the information you provided and our discussion, the probationary termination is approved."[23] At exactly the same time, Mitchell emailed Luis stating, "I would like to set up some time to speak with you regarding an urgent matter."[24]  Luis received Mitchell's email, but did not respond.[25] At 2:08 p.m. Luis emailed Brownlie asking her to "[p]lease hold off on administering this notice [of termination] as I have received notification that may delay the probationary termination.  I will inform you when you can proceed."[26]  At 2:51 p.m., Luis emailed Brownlie, "You can proceed."[27]  At approximately 4:00 p.m. that afternoon, Brownlie discharged Mitchell.[28]

---

[22]Exhibit D of Plaintiff's Appendix, Docket Entry No. 26-1, p. 75.

[23]May 27, 2022, Email from Carlos Luis to Danielle Brownlie, Exhibit J to Defendant's MSJ, Docket Entry No. 25-1, p. 184.

[24]Exhibit M of Plaintiff's Appendix, Docket Entry No. 26-1, p. 204.  See also Mitchell Deposition, p. 188:15-16, Exhibit E of Plaintiff's Appendix, Docket Entry No. 26-1, p. 94; and Luis Deposition, p. 99:3-15, Exhibit K of Plaintiff's Appendix, Docket Entry No. 26-1, p. 197.

[25]Luis Deposition, p. 99:16-17, Exhibit K of Plaintiff's Appendix, Docket Entry No. 26-1, p. 197.

[26]Exhibit L to Defendant's MSJ, Docket Entry No. 25-1, p. 184.

[27]Id. at 183.

[28]Brownlie Deposition, p. 169:21-24, Exhibit H of Plaintiff's
(continued...)

On Wednesday, June 1, 2022, Rodriguez sent the following email to Kemp:

> In the morning of Thursday May 26, Alisha Mitchell Clinic
> Manager at COM reached out to me to file a complaint
> against her manager Danielle Brownlie . . . She mentioned
> that she felt Danielle was rude and disrespectful towards
> her and she wanted to file a complaint with HR and EOS
> [Equal Opportunity Services].   She mentioned Danielle
> told her to apologize for being late and then instructed
> her to leave (Danielle's) office.   She also mentioned
> that she was demanding that Alisha submit a report by the
> end of the day and then wanted her to turn it in by 2pm
> instead.
>
> I was not able to meet or discuss any of this with her
> until that afternoon.  By the time I met with her, she
> said she had already reached out to HR and they directed
> her back to her college HR.  I am not sure who she spoke
> to in the UH HR office that morning.  Per Paule Anne, HR
> complaints go thru her before going to HR.  I mentioned
> that to Alisha and she said she did not want to go to
> Paule Anne because Danielle mentioned they are friends.
> She also mentioned she would file a complaint with EOS
> directly.[29]

Although Brownlie initially intended to replace Mitchell, after the position had been posted for several months, Brownlie made Mitchell's duties her own.[30]

------

[28](...continued)
Appendix, Docket Entry No. 26-1, p. 178; Mitchell Deposition, p. 188:14-17, Exhibit E of Plaintiff's Appendix, Docket Entry No. 26-1, p. 94.

[29]Exhibit L of Plaintiff's Appendix, Docket Entry No. 26-1, p. 202; Exhibit M to Defendants' MSJ, Docket Entry No. 25-1, p. 190.

[30]Brownlie Deposition, p. 147:19-148:22, Exhibit H of Plaintiff's Appendix, Docket Entry No. 26-1, pp. 162-63.

### III.   Analysis

The University argues that it is entitled to summary judgment because Mitchell "(1) . . . cannot make a prima facie showing of discrimination or retaliation, and, alternatively, (2) she cannot show that UH's legitimate reason for terminating her during the probationary period was pretextual or that race was a motivating factor in the decision."[31]   Asserting she can show that she was replaced by Brownlie, that she complained of discrimination to the appropriate person, and that the University's stated reasons for discharging her are not true but, instead, are pretexts for race and color discrimination, Mitchell argues that the University's MSJ should be denied because the evidence establishes a prima facie case for both race and color discrimination and retaliation, and casts sufficient doubt on the University's purported rationale for discharging her to require a jury trial.[32]

### A.   Applicable Law

Mitchell has asserted claims for race and color discrimination and for retaliation in violation of Title VII.  Title VII makes it an unlawful employment practice for an employer to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of such

_____

[31]Defendants' MSJ, Docket Entry No. 25, p. 31.

[32]Plaintiff's Response, Docket Entry No. 25, pp. 17-27.

individual's race or color.  42 U.S.C. § 2000e-2(a)(1).  Title VII also makes retaliation for having complained about discrimination an unlawful employment practice.  42 U.S.C. § 2000e-3(a).  Because Mitchell has not cited direct evidence of discrimination or retaliation, her claims must by analyzed under the burden-shifting framework that courts use in circumstantial evidence cases articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973).  The McDonnell Douglas burden-shifting analysis requires the plaintiff to present evidence establishing a prima facie case.  93 S. Ct. at 1824.  Once a prima facie case is established, a presumption of discrimination or retaliation arises, and the burden of production shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action at issue.  Id.  If the defendant meets this burden of production, the presumption of discrimination or retaliation created by the prima facie case disappears, and the plaintiff is required to present evidence that the defendant's proffered explanation is not true, but is instead a pretext for discrimination.  Id. at 1825.[33]

---

[33]Title VII also allows plaintiffs to show that the defendant's reason, while true, is only one of the reasons for its conduct, and that another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative).  See Comcast Corp. v. National Association of African American-Owned Media, 140 S. Ct. 1009, 1017 (2020) (summarizing history of Title VII's motivating factor test).  But Mitchell has neither alleged nor argued that this is a mixed-motive case.

**B.    Application of the Law to the Undisputed Facts**

1.   <u>The University Is Entitled to Summary Judgment on Mitchell's Claims for Race and Color Discrimination</u>

Mitchell alleges that the University discriminated against her in violation of Title VII on the basis of her race and color, African American and black, by discharging her upon Brownlie's recommendation, made after only a few days of working with her.[34] The University argues that it is entitled to summary judgment because

> [t]he basis of [Mitchell's] discrimination claim is her subjective belief that conversations with Ms. Brownlie on May 25 and May 26 were discriminatory.  Specifically, Ms. Mitchell testified Ms. Brownlie discriminated against her by the reference to her hair, nails, the way Ms. Brownlie looked at her, and Ms. Brownlie's alleged tone and hand gestures.[35]

Mitchell urges the court to deny the University's motion for summary judgment on her discrimination claims arguing that she has cited evidence establishing a prima facie case, and evidence from which reasonable jurors could find that the University's stated reasons for her discharge are not true but are, instead, pretexts for race and color discrimination.[36]

---

[34]Plaintiff's Original Complaint, Docket Entry No. 1, pp. 3-5 ¶¶ 12-20.  <u>See also</u> Plaintiff's Response, Docket Entry No. 26, pp. 8-12 and 19-20.

[35]Defendant's MSJ, Docket Entry No. 25, p. 31.

[36]Plaintiff's Response, Docket Entry No. 26, pp. 17-20.

(a)  Mitchell Establishes a Prima Facie Case

To establish a _prima facie_ case of race or color discrimination using the McDonnell Douglas framework, Mitchell must cite evidence capable of establishing that: (1) she belongs to a protected group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) she was replaced by or treated less favorably than similarly situated employees who do not belong to her protected group.  McDonnell Douglas, 93 S. Ct. at 1824.  The University does not dispute that as a black African American Mitchell belongs to protected groups, that Mitchell was qualified for her position, or that Mitchell suffered an adverse employment action when she was discharged.  The University argues that Mitchell cannot establish a _prima facie_ case because "there are no material facts to show the presence of a similarly situated employee, much less one who was treated more favorably.  And, there is no contention or evidence that Ms. Mitchell was . . . replaced. Her job remains open."[37]  Mitchell responds that she has established a prima facie case because the undisputed evidence shows that her duties were absorbed by her white supervisor, Brownlie.[38]

Citing Howard v. United Parcel Service, Inc., 447 F. App'x 626, 629 (5th Cir. 2011) (per curiam), and Brownlie's Deposition testimony that she absorbed Mitchell's duties, Mitchell argues that

---

[37]Defendant's MSJ, Docket Entry No. 25, pp. 31-32.

[38]Plaintiff's Response, Docket Entry No. 26, pp. 17-20.

-16-

she was replaced by someone outside of her protected groups because Brownlie is white.[39]   In <u>Howard</u> the plaintiff's position was eliminated, he was demoted, and all of his job duties were absorbed by a white manager.  <u>Id.</u> at 628.  The defendant employer argued that because the plaintiff's position was eliminated and no one was hired to replace him, the plaintiff could not make a prima facie showing of discrimination.  <u>Id.</u> at 629.  The Fifth Circuit rejected that argument because the plaintiff's position was the only one eliminated and all of his job duties were assumed by someone outside of his protected class.  <u>Id.</u> & n. 2.  The undisputed evidence provided by Brownlie's testimony shows that the facts of this case are analogous to those of the <u>Howard</u> case, <u>i.e.,</u> Mitchell's position was the only one eliminated and all of her job duties were assumed by someone outside of her protected class.  The court concludes, therefore, that Mitchell has made a prima facie showing of discrimination.

(b)   The University Cites Legitimate, Non-Discriminatory Reasons for Mitchell's Discharge

The University argues that

[i]n Mitchell's four months at UH it became clear [she] was not a fit for her job for multiple reasons, including lack of attention to detail on important projects, despite repeated instances of feedback, and issues with

---

[39]<u>Id.</u> at 15 and 17 (citing Brownlie Deposition, p. 147:19-148:22, Exhibit H of Plaintiff's Appendix, Docket Entry No. 26-1, pp. 162-63).

attendance.   In her four months at UH, Ms. Mitchell was
late, absent, or left early on at least 18 days.   Even
when she was permitted to arrive an hour after the clinic
opened, at 9 a.m., Ms. Mitchell refused to commit to
arriving on time.[40]

Concluding that Mitchell was not a good fit for her job due to

performance   and   attendance   issues   is   a   legitimate,

nondiscriminatory reasons for discharge.   See Troutman v. Time

Warner Cable Texas, L.L.C., 756 F. App'x 421, 428 (5th Cir. 2018)

("[A]s should go without saying, an employee's failure to show up

for work is a legitimate reason for firing her.") (per curiam);

Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 231 (5th

Cir. 2015) ("We have repeatedly held that a charge of 'poor work

performance' is adequate when coupled with specific examples.")

(citing inter alia Medina v. Ramsey Steel Co., Inc., 238 F.3d 674,

684-85 (5th Cir. 2001)).


            (c)   Mitchell Fails to Cite Evidence Raising a Genuine
                  Issue of Material Fact for Trial

     Under the McDonnell Douglas burden-shifting framework, once

the   defendant   has   produced   evidence   of   a   legitimate,

nondiscriminatory reason for the adverse action, the plaintiff must

produce evidence that would enable a reasonable jury to find that

the defendant's reason is a pretext for discrimination. 93 S. Ct.

at 1825.   Pretext is established "either through evidence of

---

     [40]Defendant's MSJ, Docket Entry No. 25, p. 35.

disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"   <u>Thomas v. Johnson</u>, 788 F.3d 177, 179 (5th Cir. 2015), <u>cert. denied</u>, 136 S. Ct. 822 (2016) (quoting <u>Laxton v. Gap, Inc.</u>, 333 F.3d 572, 578 (5th Cir. 2003)).

The University argues that Mitchell is unable to cite evidence capable of rebutting its reasons for discharging her, <u>i.e.</u>, its determination that she was not a good fit for her position for multiple reasons, including lack of attention to detail that caused mistakes and errors and attendance issues.   The University also argues that Mitchell is unable to show that the real reason for her discharge was discriminatory animus for her race or color.[41]

Mitchell responds that "although UH groups the alleged termination reasons into broad categories, 'performance,' 'attitude,' and 'attendance,' Ms. Brownlie provided specific rationales in an email to Mr. Luis on May 27, 2022, at 10:00 am. Each one is pretext."[42]   Mitchell disputes and denies the reasons that Brownlie listed in her May 27th email to Luis in support of her request for permission to discharge Mitchell.[43]   For example,

---

[41]<u>Id.</u> at 33-36.

[42]Plaintiff's Response, Docket Entry No. 26, p. 23.

[43]<u>Id.</u> at 23-27.   Although Mitchell alleges that she was treated less favorably than Sandy Alvarez, <u>see</u> Plaintiff's Original Complaint, Docket Entry No. 1, p. 5 ¶ 24, Mitchell does not argue disparate treatment as evidence of pretext. <u>See</u> Plaintiff's
(continued...)

Mitchell disputes that she disrespected Brownlie with comments by denying that when, after arriving late on May 26th Brownlie told her that could not happen again, she responded that "it probably will happen again."[44]  Mitchell disputes Brownlie's statement that she did not grasp concepts to perform her job appropriately by acknowledging that while she made spreadsheet errors, the University failed to present evidence that she

> made additional significant mistakes or errors after . . . meeting [with Brownlie about that issue on May 25th]. . . . In other words, Ms. Brownlie did not identify additional errors to justify [her] termination. At best, she relied on prior circumstances before providing [her] an opportunity to improve.[45]

Mitchell disputes that she responded combatively to upcoming changes to the Clinic's hand hygiene policy and work schedule by asserting that while she questioned whether she could comply with those changes, she denies that she did so defiantly.[46]  Mitchell disputes that she arrived late without approval by acknowledging that while she did arrive late without approval on May 26th, Brownlie told her that could not happen again, and the University

---

[43](...continued)
Response, Docket Entry No. 26, pp. 23-27 (arguing only that the University's stated reasons for her discharge are false).

[44]Plaintiff's Response, Docket Entry No. 26, p. 24.

[45]Id. at 24-25.

[46]Id. at 25.

-20-

failed to present evidence that she arrived late on May 27th.[47]
Mitchell disputes Brownlie's statement that she engaged in
workplace drama that disrupted patient care by arguing that
"constitutes a stale issue, which Ms. Amos had already addressed."[48]
Citing <u>Burton</u>, 798 F.3d at 233, Mitchell disputes Brownlie's
statement that her overall performance did not align with the
expectations for her position by arguing that "[t]his is a catch-
all reason encapsulating the items described above. . . .
Considering that it is simply a different way to communicate the
same alleged performance issues raises an inference that it is
pretextual."[49]

Mitchell cites <u>Burton</u> for holding that "[e]vidence of a sudden
and unprecedented campaign to document [plaintiff's] deficiencies
and thus justify a decision that had already been made could raise
an inference of pretext."  798 F.3d at 236 (quoting <u>Patrick v.
Ridge</u>, 394 F.3d 311, 318 (5th Cir. 2004)).  In <u>Burton</u>, however, the
employer sought to rely on alleged incidents of the employee's poor
performance that occurred after it made its discharge decision.
798 F.3d at 238.  Observing that courts "'are not to assess the
employer's credibility or the truthfulness of its reason at this
[summary judgment] stage of the inquiry,'" <u>id.</u> at 231, the Fifth

---

[47]<u>Id.</u> at 26.

[48]<u>Id.</u>

[49]<u>Id.</u>

Circuit explained that courts "consider only pre-decision examples of alleged poor work performance." Id. (quoting Patrick, 394 F.3d at 318).   The court explained that "a purported reason for a decision that postdates the actual decision is necessarily illegitimate."   Id. at 238.   Burton stands for the obvious proposition that after-acquired knowledge cannot have been considered by a defendant when making its employment decision. Mitchell, however, presents no similar evidence that the University relied on post-decision conduct as reasons for her discharge. Instead, Mitchell argues that "Ms. Brownlie's reliance on stale events — which were not disciplinary issues at the time — indicates that this explanation is pretextual."[50]

Mitchell does not dispute that she arrived late without approval on May 26th, or that she had a history of arriving late without approval.   She merely argues that Amos did not discipline her for arriving late.   Nor does Mitchell dispute that she had a history of making spreadsheet errors caused by a lacked attention to detail as evidenced by an email that Amos sent to her on May 12, 2022.   Attached to that email was a document to which Amos "made additional changes . . . to reflect what the instructions noted."[51] In the body of the email Amos said:

---

[50]Id.

[51]Exhibit B to Plaintiff's Appendix, Docket Entry No. 26-1, p. 63.

> I want to provide some feedback; please make sure, especially during this critical implementation, that you are taking your time to read the instructions and check for accuracy before sending information. The set-up is vital, and we have to ensure we are double-checking our work for grammatical errors and following the noted instructions.[52]

Instead, Mitchell argues that the nature and extent of her spreadsheet errors are not in the record, there is no evidence that she made additional spreadsheet errors after Brownlie discussed this issue with her on May 25th, and that Brownlie "relied on prior circumstances before providing [her] an opportunity to improve."[53] Nor does Mitchell dispute that she resisted Brownlie's counseling regarding her schedule and the Clinic's hand hygiene policy.

At best, Mitchell's evidence is capable of showing that the University's decision that she was not a good fit for her job was an incorrect decision. Mitchell's evidence is not capable of showing that the University did not reasonably believe that her attendance issues, spreadsheet errors, or responses to Brownlie's counseling made her a poor fit for her position. In pretext cases it is not enough that the employer was wrong about the underlying facts that motivated the adverse employment action. The issue is whether the employer had a good-faith belief that the facts that motivated the adverse action were true. See Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 379 (5th Cir. 2010). A factual

---

[52]Id.

[53]Plaintiff's Response, Docket Entry No. 26, p. 25.

dispute over the employee's innocence of allegations against her is not enough to survive summary judgment; the plaintiff must put forward evidence sufficient to create a factual dispute as to whether or not the defendant subjectively believed that the allegations were true. Id. See also Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").  Nor has Mitchell cited evidence from which a reasonable jury could conclude that the University's decision that she was a poor fit for her position was not the real reason for her discharge, and that her discharge was motivated by animus for her race or color.

Mitchell contends that Brownlie evidenced discriminatory animus for her race and color by looking at her "in disgust," commenting on her nails, and talking to her about her hair.[54]  The University argues that "[n]ot only is there no evidence to support this subjective belief, this belief does not support her discrimination claim."[55]  The court agrees.  Accepting Mitchell's testimony that Brownlie looked at her in disgust, commented on her nails, and talked to her about her hair, this evidence is not sufficient to raise a genuine issue of material fact for trial

---

[54]Plaintiff's Original Complaint, Docket Entry No. 1, p. 3 ¶ 13.  See also Plaintiff's Response, Docket Entry No. 26, pp. 10-11; and Mitchell Deposition, pp. 161:13-165:25, Exhibit E of Defendant's Appendix, Docket Entry No. 25-1, pp. 82-86.

[55]Defendant's MSJ, Docket Entry No. 25, p. 33.

because other than the fact that Brownlie is white and Mitchell is black, there is no evidence that Brownlie's conduct was motivated by animus for Mitchell's race or color.  The closest Mitchell comes to connecting Brownlie's alleged conduct to animus for her race and color is by citing Oncale v. Sundowner Offshore Services, Inc., 118 S. Ct. 998, 1003 (1998), for its holding that courts may consider "common sense, and an appropriate sensitivity to social context," and arguing that

> Ms. Brownlie drew harsh conclusions about Ms. Mitchell's skills and abilities in a few days based on scant information.  It defies reason to blanketly assume that Ms. Mitchell's superficial characteristics, like race and color, did not play a role in Ms. Brownlie's decision-making.[56]

Mitchell's reliance on Oncale is misplaced not only because that was a sexual harassment case in which the Court explained that "[c]ommon sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive," id., but also because that case involved direct evidence of discrimination that the plaintiff had been "called . . . a name suggesting homosexuality."  Id. at 1001. Mitchell has not cited any such evidence of direct discrimination.

Moreover, Mitchell has cited uncontradicted evidence that the decision to discharge her was not made by Brownlie alone, but

---

[56]Plaintiff's Response, Docket Entry No. 26, p. 20.

instead, was recommended by Brownlie, and approved by Amos, and Luis. Mitchell has not cited any evidence from which a reasonable jury could conclude that Amos or Luis was motivated by discriminatory animus for her race or color. The court therefore concludes that Mitchell has failed to raise a genuine issue of material fact for trial, and Defendant is entitled to summary judgment on Mitchell's claim for race or color discrimination arising from her discharge.

2. <u>The University is Entitled to Summary Judgment on Mitchell's Retaliation Claim</u>

Mitchell alleges that the University retaliated against her for complaining of race and color discrimination when it discharged her on May 27, 2022, the day after she complained about Brownlie's discriminatory acts.[57] The University argues that it is entitled to summary judgment on Mitchell's retaliation claim because she cannot establish a <u>prima facie</u> case, cannot refute its non-retaliatory reasons for discharging her, and cannot show that but for he complaint of discrimination she would not have been discharged.[58] Where, as here, plaintiff seeks to establish a retaliation claim through circumstantial evidence, courts use the <u>McDonnell Douglas</u> framework. <u>See Jenkins v. City of San Antonio Fire Department</u>, 784 F.3d 263, 269 (5th Cir. 2015).

---

[57]Plaintiff's Complaint, Docket Entry No. 1, p. 6 ¶¶ 26-29.

[58]Defendant's MSJ, Docket Entry No. 25, pp. 36-39. <u>See also</u> Defendant's Reply, Docket Entry No. 27, pp. 6-9.

(a)   Mitchell Establishes a <u>Prima Facie</u> Case

To establish a <u>prima facie</u> case of retaliation, Mitchell must present evidence showing that (1) she engaged in protected activity, (2) she suffered a material adverse employment action, and (3) a causal connect exists between the protected activity and the material adverse action.  <u>Jenkins</u>, 784 F.3d at 269.

**(1)   Mitchell Engaged in Protected Activity**

The University argues that Mitchell cannot meet the first element of her <u>prima facie</u> case because the only complaint of discrimination that she made was made to Rodriguez, who was merely a colleague and not a supervisor or a decision-maker.   The University argues, therefore, that Mitchell's complaint to Rodriguez was not an activity protected by Title VII.[59]  Mitchell responds that her "complaint to Rodriguez . . . constituted protected activity, especially considering Ms. Rodriguez's human resources functions, as described by Ms. Lewis, and consistent commitment to reporting such issues to upper management."[60]

"[A]n employee has engaged in protected activity if she has 'opposed any practice made an unlawful employment practice under [42 U.S.C. § 2000e-3(a)].'"  <u>Turner v. Baylor Richardson Medical Center</u>, 476 F.3d 337, 348 (5th Cir. 2007).  Although the University

_____

[59]Defendant's MSJ, Docket Entry No. 25, p. 37.  <u>See also</u> Defendant's Reply, Docket Entry No. 27, p. 6.

[60]Plaintiff's Response, Docket Entry No. 26, p. 21.

-27-

disputes Mitchell's assertion that the complaint of discrimination that she made to Rodriguez constitutes activity protected by Title VII, "[a]n employee that files an internal complaint of discrimination engages in a protected activity." Rodriguez v. Wal-Mart Stores, Inc., 540 F. App'x 322. 328 (5th Cir. 2013) (per curiam). Because Lewis, the supervisor to whom both Rodriguez and Brownlie reported, testified that Rodriguez was expected to report all human resource-related issues to her,[61] viewing the evidence in the light most favorable to Mitchell, the court concludes that she has cited evidence capable of showing that she engaged in protected activity when she complained of discrimination to Rodriguez.

**(2)   Mitchell's Discharge Was a Adverse Action**

An adverse action for purposes of establishing a prima facie case of retaliation is one that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Railway Co. v. White, 126 S. Ct. 2405, 2415 (2006) (internal quotation marks and citations omitted). Discharge undisputedly constitutes a materially adverse employment action capable of supporting a retaliation claim.

---

[61]Lewis Deposition, pp. 40:14-43:2, Exhibit C of Plaintiff's Appendix, Docket Entry No. 26-1, pp.70-73.

### (3)   Temporal Proximity Establishes Prima Facie Showing of Causal Connection

Asserting that the decision-makers — Brownlie, Amos, and Luis — were unaware that Mitchell had complained to Rodriguez of discrimination when they decided to discharge her, the University argues that temporal proximity cannot establish a causal link where the decision maker had no knowledge of the protected activity.[62] Missing from Mitchell's response is any evidence that Brownlie, Amos, or Luis knew that she had complained to Rodriguez of discrimination before they decided to discharge her. Nevertheless, because the court has already concluded that viewing the evidence in the light most favorable to Mitchell, the complaint of discrimination that Mitchell made to Rodriguez was an activity protected by Title VII, and because Mitchell's discharge occurred the day after she complained to Rodriguez, the close temporal proximity of one day between the time that Mitchell complained to Rodriguez and her discharge is sufficient to establish a prima facie case of retaliation under Title VII.  See Lyons v. Katy Independent School District, 964 F.3d 298, 306 (5th Cir. 2020) (recognizing one week between complaint of discrimination and adverse action as "sufficient evidence of causality to establish a prima facie case of retaliation").

---

[62]Defendant's MSJ, Docket Entry No. 25, pp. 37-38.

      (b)   The University Cites Legitimate, Non-Discriminatory
          Reasons for Mitchell's Discharge

For the reasons stated in § II.B.1(b), above, the court has already concluded that the University has stated legitimate, non-discriminatory reasons for Mitchell's discharge.

      (c)   Mitchell Fails to Cite Evidence Raising a Genuine
          Issue of Material Fact for Trial

Retaliation claims are subject to the traditional "but for" causation standard.  See Garcia v. Professional Contract Services, Inc., 938 F.3d 236, 243-44 (5th Cir. 2019) ("At the pretext stage, the Supreme Court's decision in [University of Texas Southwestern Medical Center v.] Nassar[, 133 S. Ct. 2517, 2533 (2013)], requires a showing of but-for causation, which requires more than mere temporal proximity.").  "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Nassar, 133 S. Ct. at 2533.  Thus, in order to raise a genuine issue of material fact for trial, Mitchell must cite evidence capable of proving that she would not have been discharged but for having engaged in activity protected by Title VII.

The University argues that it is entitled to summary judgment on Mitchell's retaliation claim because even if the court construes the complaint of discrimination that Mitchell lodged with Rodriguez as protected activity, there is no evidence that anyone else at the

-30-

University knew of her complaint before the decision was made to discharge her.[63]   "[T]o establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." Equal Employment Opportunity Commission v. EmCare, Inc., 857 F.3d 678, 683 (5th Cir. 2017)(quoting Manning v. Chevron Chemical Co., 332 F.3d 874, 883 (5th Cir. 2003), cert. denied, 124 S. Ct. 1060 (2004)).   "Generally, this requires some showing that the decisionmaker — the individual 'who actually made the decision or caused the decision to b made — was aware of the activity." Id. (quoting Russell v. McKinney Hospital Venture, 235 F.3d 219, 227 (5th Cir. 2000)).

Acknowledging that "a plaintiff must show that the decisionmaker knew about the protected activity before taking an adverse action,"[64] Mitchell argues that she

> first contacted Ms. Rodriguez on May 26th in the morning. According to Ms. Rodriguez, she learned about the complaint's substance at that time and gathered additional information in the afternoon.   The same afternoon, Ms. Brownlie documented her allegations about Ms. Mitchell, absent documenting that she desired termination.   As noted above, Ms. Lewis testified that Ms. Rodriguez typically brought issues to her attention. Sometime after 3:30 pm, Ms. Lewis and Ms. Brownlie discussed Ms. Mitchell, culminating in the termination decision.   The following day, May 27th, UH terminated Ms. Mitchell.

---

[63]Defendant's MSJ, Docket Entry No. 25, p. 37.

[64]Plaintiff's Response, Docket Entry No. 26, p. 21.

-31-

The chronology is not well documented; however, all inferences must be drawn in Ms. Mitchell's favor. A juror could reasonably find that Ms. Brownlie learned about Ms. Mitchell's complaint when speaking to Ms. Lewis. This conclusion does not require "speculative theories" but, rather, the information presented on timing and UH's customary approach.[65]

Missing from Mitchell's argument is a cite to any evidence in the record. Moreover, the court's review of the summary judgment evidence shows that Mitchell's argument on this point is not supported by evidence. For example, although Mitchell cites Lewis's testimony that Rodriguez was required to report any human resource-related issues to her, and that Rodriguez typically brought issues to her attention,[66] there is no evidence showing when — or if — Rodriguez brought this issue to Lewis' attention. The only evidence in the record showing what Rodriguez did after receiving Mitchell's complaint is the email that she sent to Kemp, the University's Executive Director for Human Resources Services on Wednesday, June 1, 2022, several days after Mitchell was discharged on May 27th.[67] Rodriguez does not say that she brought this issue to Lewis's attention. To the contrary, she says that "[p]er [Lewis], HR complaints go thru her before going to HR. I mentioned that to [Mitchell] and she said she did not want to go to [Lewis]

---

[65]Id. at 22.

[66]Id. at 13 (citing Lewis Deposition, 41:18-43:7, Exhibit C of Plaintiff's Appendix, Docket Entry No. 26-1, pp.71-73).

[67]Exhibit L of Plaintiff's Appendix, Docket Entry No. 26-1, p. 202.

because [Brownlie] mentioned they are friends."[68]   Rodriguez's statement to Kemp on June 1st that Mitchell did not want her complaint to go to Lewis, makes Mitchell's argument that "[a] juror could reasonably find that Ms. Brownlie learned about [her] complaint when speaking to Ms. Lewis [on May 26th]" no more than a speculative theory insufficient to raise a genuine issue of material fact for trial. See EmCare, 857 F.3d at 683 ("Demonstrating that a decisionmaker was aware of an employee's protected activity . . . requires more evidence than mere curious timing coupled with speculative theories.") (internal citation omitted).

Mitchell has failed to offer evidence that any of the University decision makers knew that she had engaged in protected activity by complaining to Rodriguez of race discrimination when they made the decision to discharge her.  Moreover, even assuming that any of the University decision makers knew that Mitchell had engaged in protected activity, "once the employer has offered a nondiscriminatory reason for the adverse action, additional evidence beyond mere knowledge is necessary to demonstrate that the employer's proffered reason for the action is pretextual." Shannon v. Henderson, 275 F.3d 42, 2001 WL 1223633, * 4 (5th Cir. 2001) (per curiam) (citing Medina, 238 F.3d at 684).  While the Fifth Circuit has recognized that

---

[68]Id.

-33-

> [c]lose timing between an employee's protected activity
> and an adverse action against her may provide the 'causal
> connection' necessary to establish a <u>prima facie</u> case of
> retaliation," <u>Swanson v. General Services Administration</u>,
> 110 F.3d 1180, 1188 (5th Cir.[)], <u>cert. denied</u>, 118 S. Ct.
> 366 (1997)], suspicious timing alone is insufficient to
> establish pretext.

<u>Id.</u>  For essentially the same reasons stated in § III.B.1(c), above, that the court rejected Mitchell's argument that the University's stated reasons for her discharge are pretexts for race and color discrimination, the court concludes that those reasons are not pretexts for retaliation.  The court concludes therefore that Mitchell has failed to raise a genuine issue of material fact for trial on her retaliation claim.


## IV.  <u>Conclusions and Order</u>

Because as discussed in § I, above, discovery has ended and both parties have submitted evidence outside of the pleadings, the University's Motion for Judgment on the Pleadings is **DENIED.** Because for the reasons stated in § III, above, the court concludes that Mitchell has failed to raise genuine issues of material fact for trial on her claims for race and color discrimination, and for retaliation in violation of Title VII, the University's Motion for Summary Judgment is **GRANTED.**  Thus, Defendant University of Houston's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c), or, in the Alternative, Motion for Summary Judgment

on All Claims, Docket Entry No. 25, is **GRANTED in PART and DENIED in PART**.

Because the court has concluded that the University is entitled to summary judgment on all of Mitchell's claims, Defendant University of Houston's Motion in Limine, Docket Entry No. 28, is **DENIED as MOOT**, and Plaintiff's Motion in Limine, Docket Entry No. 29, is **DENIED as MOOT**.

**SIGNED** at Houston, Texas, on this 7th day of October, 2024.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE